IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

```
DONALD FLYNN,                       :
                                    :
          Plaintiff                 :
                                    :
     v.                             :   CIVIL NO. 3:CV-12-1535
                                    :
DEPARTMENT OF CORRECTIONS,          :   (Judge Conaboy)
ET AL.,                             :
                                    :
          Defendants                :
```
_____

## MEMORANDUM
### Background

Donald Flynn, an inmate presently confined at the State Correctional Institution, Coal Township, Pennsylvania (SCI-Coal Twp.), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. By Memorandum and Order dated August 26, 2013, Defendants' motion seeking partial dismissal was granted. Specifically, dismissal was granted in favor of Defendants Pennsylvania Department of Corrections (DOC) and the following DOC officials, Secretary John Wetzel; Chief Grievance Officer Dorina Varner; and Chief Hearing Examiner Robin Lewis. See Doc. 33, p. 18.

Dismissal was also entered in favor of the following SCI-Coal Twp. Defendants: Hearing Examiner Kerns-Barr; Unit Manager Charles Custer; Major Miller; Licensed Psychologist Manager (LPM) John Sidler; Cam II Michael Corbacio; Correctional Officer Richards; ex-Deputy Superintendent Rhonda Ellet; Medical Director

1

McCarty; Unit Manager Williams; Correctional Officer Lahr; and Captain Scicchitano.

As a result, the Remaining Defendants are the following SCI-Coal Twp. officials:  Superintendent David Varano; Mail Room Inspector Terese Jellen; Captain Charles Stetler; Correctional Officer Nowell; as well as Lieutenants Shipe and R.E. Long. Plaintiff's surviving claims are: (1) mail interference by Defendant Jellen; (2) retaliation by Defendants Stetler, Shipe, Long, and Varano; (3) improper taking of legal materials by Defendants Nowell and Long; and (4) the Psychiatric Observation Cell (POC) related claims against Defendants Stetler and Shipe.

Presently pending is Remaining Defendants' motion seeking entry of summary judgment.  See Doc. 39.

## **Discussion**

Remaining Defendants contend that they are entitled to entry of summary judgment on the grounds that: (1) Plaintiff does not allege that he suffered any injury to a non-frivolous pursuit of a legal remedy or was deprived of any other constitutional protection as the result of the conduct attributed to Mail Room Inspector Jellen; (2) Plaintiff failed to exhaust his administrative remedies with respect to his POC related allegations; (3) Defendants Nowell and Long did not confiscate Plaintiff''s legal materials but rather those officials properly confiscated contraband; and (4) Plaintiff has not established that his RHU placement was retaliatory.

## **Standard of Review**

Summary judgment is proper if "the pleadings, the discovery

2

and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary

3

judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial." Celotex, 477 U.S. at 322-23. "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'" Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Access to the Courts**

The Complaint initially and generally alleges that between 2009-2012, Defendant Jellen and other unidentified SCI-Coal Twp. mail inspectors intentionally destroyed, rejected, and lost Plaintiff's incoming and outgoing mail. See Doc. 1, p. 3. There were also several instances were Flynn's incoming and outgoing legal mail was purportedly opened outside of his presence. See id.

Remaining Defendants assert that to the extent that Plaintiff is asserting a denial of access to the courts claim against Jellen, said allegation must fail because Flynn has not alleged that he suffered any injury to his pursuit of a non-frivolous legal claim.

Prisoners enjoy a constitutional right of meaningful access to the law libraries, legal materials, or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). Inmates have a right to send and receive legal mail which is uncontroverted and implicates

4

both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts. "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees." Proudfoot v. Williams, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts. Under the standards mandated by Lewis, in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury. See Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that Lewis effectively requires a showing of actual injury where interference with legal mail is alleged).

Following a careful review of the Complaint, it is clear to this Court that Flynn has failed to adequately demonstrate that he suffered any injury to a non-frivolous legal claim as required under Lewis. There is no assertion that the alleged interference by Defendant Jellen caused him to suffer any adverse determination with respect to any action he was pursuing in federal or state court.

5

Accordingly, this Court agrees that entry of summary judgment should be granted in favor of Mail Room Inspector Jellen with respect to any denial of access to the court claim.

**Grievance Procedure**

The Complaint also includes a vague assertion that Jellen and other unidentified officials denied Plaintiff the right to file a grievance at some point between 2009-2012. See Doc. 1, p. 3. Remaining Defendants contend that any claim by Plaintiff that Defendant Jellen denied him the right to file an institutional grievance must fail because the inmate did not enjoy a constitutional right to a grievance procedure. See Doc. 40, p. 6.

This Court agrees that prisoners have no constitutionally protected right to a grievance procedure. See Jones v. North Carolina Prisoners' Labor Union, Inc., 433 U.S. 119, 137-38 (1977)(Burger, C.J., concurring) ("I do not suggest that the [grievance] procedures are constitutionally mandated."); Speight v. Sims, No. 08-2038, 2008 WL 2600723 at *1 (3d. Cir. Jun 30, 2008)(citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001)("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner.")

While prisoners do have a constitutional right to seek redress of their grievances from the government, that right is the right of access to the courts which is not compromised by the failure of prison officials to address an inmate's grievance. See Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991) (federal grievance

6

regulations providing for administrative remedy procedure do not create liberty interest in access to that procedure). Pursuant to those decisions, any attempt by Plaintiff to establish liability against Defendant Jellen based upon her handling of his administrative grievances or complaints does not support a constitutional claim. See also Alexander v. Gennarini, 144 Fed. Appx. 924, 925 (3d Cir. 2005)(involvement in post-incident grievance process not a basis for § 1983 liability); Pryor-El v. Kelly, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). This request for entry of summary judgment in favor of defendant Jellen will also be granted.

**Mail Interference**

It is next argued that "Plaintiff does not establish any other cognizable First Amendment violation by Defendant Jellen." Doc. 40, p. 6. Remaining Defendants explain that the mail interference claim against Jellen is "purely conclusory," no specific policies are identified as having been violated, and there are no facts alleged which could sufficiently give rise to a viable First Amendment claim. Id. at p. 8.

Interference with inmate non-legal mail may amount to a denial of free speech under the First and Fourteenth Amendments. Taylor v. Oney, 196 Fed. Appx. 126, 128 (3d Cir. 2006)(the opening

7

of incoming legal mail outside of a prisoner's presence impinges upon the inmate's First Amendment rights). The Court of Appeals for the Third Circuit in <u>Hamm v. Rendell</u>, 166 Fed. Appx. 599, 603 (3d Cir. 2006), stated that when district courts address claims of improper mail inspections and intrusive mail regulations or any actions involving outgoing inmate mail, the test developed by the Supreme Court in <u>Procunier v. Martinez</u>, 416 U.S. 396, 412 (1974), should be employed. Specifically, courts should inquire as to whether the prison restriction or conduct relating to outgoing inmate mail furthered an important or substantial government interest unrelated to the suppression of expression, and whether the conduct was intrusive only to the degree necessary to protect that interest. <u>Id.</u>; <u>see</u> <u>also</u>, <u>Nasir v. Morgan</u>, 350 F.3d 366, 371-74 (3d Cir. 2003)(<u>Procunier</u> should be applied to outgoing prisoner correspondence issues).

In <u>Jones v. Brown</u>, 461 F.3d 353, 359 (3d Cir. 2006), the Third Circuit Court of Appeals reiterated that prisoners have a First Amendment right with respect to their legal mail and that "a state pattern and practice, or . . . explicit policy of opening legal mail outside the presence of the addressee inmate interferes with protected communications . . . and accordingly impinges upon the inmate's right to freedom of speech." The Court added that a prisoner litigant pursuing such a claim is not required to allege actual injury. <u>See</u> <u>id.</u>

It is well settled that liberal treatment must be afforded to filings made by <u>pro</u> <u>se</u> litigants. However, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." Ashcroft v. Iqbal, __ U.S. ___,129 S.Ct 1937, 1949 (2009). Legal conclusions must be supported by factual allegations and a complaint must state a plausible claim for relief. See id. at 1950; see also Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008).

  This Court agrees that the Plaintiff's general assertion that between 2009-2012 prison officials including Jellen destroyed, rejected and lost Plaintiff's incoming and outgoing mail does not satisfy the Iqbal criteria. It is noted that there is no assertion by Flynn that his incoming mail was opened outside of his presence pursuant to any specific practice or policy. The Plaintiff also does not indicate how many incidents occurred or the purported role played by Jellen with respect to any of those alleged instances.

  Rather, Flynn only generally vaguely avers that his mail was withheld or rejected, there is no specific contention that any of his mail was actually opened outside of his presence. In support of there argument Defendants have also submitted a copy of a response to Grievance No. 401871 which was filed by Plaintiff and generally alleged mail interference. The response to the non-specific grievance denied relief generally noted that all of Plaintiff's mail was being handled in accordance with correctional policies.

  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."

9

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). The reviewing court must determine whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." Id. at 562.

Based upon an application of the above standards Plaintiff's vague speculative wholly conclusory claim of mail interference by Jellen does not satisfy the pleading requirements of Iqbal and Twombly and as such cannot proceed. Summary judgment will be granted in favor of Defendant Jellen.

**Administrative Exhaustion**

Plaintiff alleges that he was placed in a POC[1] dry cell for several days on or about October 19, 2011. While in the POC dry cell, Flynn alleges that he was denied water, personal hygiene supplies, clothing and needed medical attention by Stetler and Shipe.

Remaining Defendants claim entitlement to summary judgment with respect to this claim because Flynn failed to exhaust his administrative remedies. See Doc. 40, p. 12. They assert that although Flynn did file a grievance regarding his POC placement, his submission was not addressed on its merits and was rejected because of the Plaintiff's failure to comply with grievance policy procedures.

---

1. Presumably, Psychiatric Observation Cell (POC). Remaining Defendants indicate that the placement was warranted because Plaintiff had ingested drugs, conduct which was later confirmed by urine testing.

10

Section 1997e(a) of title 42 U.S.C. provides:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See Jones v. Bock, 549 U.S. 199, 216 (2007); see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d

11

Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it.[2]  The United States Supreme Court in Jones noted that the primary purpose of the exhaustion requirement is to allow prison officials to address complaints before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record.

The administrative exhaustion mandate also implies a procedural default component.  Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).  As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement."  Id. at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest."  Id.  Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations.  Woodford v. Ngo, 548 U.S. 81 (2006).

The Court of Appeals for the Third Circuit has recognized that "[t]here is no futility exception" to the exhaustion requirement.  Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002)

---

2.   In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

12

(citing Nyhuis, 204 F.3d at 75.  A subsequent decision by the Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected.  Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006).  The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust."  Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

A Consolidated Inmate Grievance Review System has been established by the Pennsylvania Department of Corrections ("DOC").[3] Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement."  See Doc. 29, p. 8.  It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal.  Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the

---

3.  The DOC's grievance system has been periodically amended.

13

Facility Manager or Superintendent.  A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA).  A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court.  However, an improperly submitted grievance will not be reviewed.

A declaration under penalty of perjury submitted bu Superintendent's Assistant Trisha Kelley states that although Plaintiff filed grievance No. 386960 it was dismissed for failure to comply with administrative appeal provisions.  See Doc. 42, p. 6, ¶ 10.  Accompanying copies of the grievance and responses confirm that the grievance raised claims regarding the conditions of Flynn's POC cell which was addressed on its  merits by decision of Major Miller dated December 9, 2011 at the initial level.  See id. at Exhibit A-1, p. 20.  An administrative appeal was denied by Facility Manager David Varano on December 15, 2011.  See id. at p. 22.  However,  a final administrative appeal was dismissed by the DOC's Chief Grievance Officer for failure to "comply with submission procedures."  Id. at p. 8.

As discussed earlier, under Woodford prisoners are required to comply with grievance system procedural rules when exhausting their administrative remedies.  Since the undisputed record establishes that Flynn's failure to do resulted in the rejection of his final administrative appeal, a finding of non-exhaustion and

14

entry of summary judgment under the well settled <u>Spruill</u> and <u>Woodford</u> standards is appropriate.

**Cell Search**

Plaintiff claims that his cell was searched on August 12, 2010 by Defendant Nowell allegedly in retaliation for Flynn's filing of a grievance. See Doc. 1, p. 3. Flynn indicates that although he was told that the search was investigative, it is his belief that the search was retaliatory. During this search Flynn contends that 243 pages of his legal materials were confiscated.

Remaining Defendants generally argue that this claim lacks merit because Nowell and Long did not take legal materials but rather confiscated pornographic material during an investigative cell search which they properly determined was contraband. <u>See</u> Doc. 40, p. 12. They also contend that because cell searches are routinely undertaken they are not adverse action for the purpose of a retaliation claim.

The United States Supreme Court in <u>Hudson v. Palmer</u>, 468 U.S. 517 (1984), established that inmates have no privacy rights in their cells, consequently, there is no constitutional prohibition against prison officials conducting unauthorized cell searches. <u>Id.</u> at 525-26; <u>Rambert v. Durant</u>, No. Civ. A. 95-5636, 1996 WL 253322 *2 (E.D. Pa. May 10, 1996); <u>Gilmore v. Jeffes</u>, 675 F. Supp. 219, 221 (M.D. Pa. 1987). However, it has also been held that while the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells, it does not mean that searches which constitute "calculated harassment unrelated to prison needs" are

15

permissible.  Hudson, 468 U.S. at 530; Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993); Proudfoot v. Williams, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992) (stating that searches conducted for 'calculated harassment' may constitute an Eighth Amendment violation).  "Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity."  Hudson 468 U.S. at 530.

There is no assertion that Flynn was subjected to repeated cell searches or that the search was conducted in an inappropriate manner.  Moreover, documents submitted by the Remaining Defendants clearly shows that two file folders containing pornographic photographs which are deemed contraband under correctional policy were discovered and taken during the search.  See Doc. 42, Exhibit A-2, p. 7.  Plaintiff also concedes that pornographic materials were taken from his cell.

However, Flynn contends that in addition to those photographs other items, namely legal material was also seized.  Admittedly, Plaintiff has not specifically identified the legal materials which were allegedly taken.  However, Remaining Defendants have not presented any evidence showing that only pornographic material was seized during the cell.  Accordingly, this Court agrees that there is no basis for a determination that the search resulted only in an improper confiscation of pornographic materials.  The request for entry of summary judgment will be denied.  Plaintiff's contention that the search was retaliatory will be addressed below.

16

**Retaliation**

Plaintiff asserts that he filed a grievance on August 8, 2010 regarding the implementation of "the J-Pay system and refusing to accept money orders."  Doc. 1, p. 3, ¶ 2.  It is alleged that Defendants Stetler, Shipe, Long, and Varano retaliated against him for filing that grievance by placing him in the prison's Restricted Housing Unit (RHU) and issuing him a misconduct charge when he refused to withdraw the grievance.  He also contends that an August 12, 2010 cell search was also retaliatory.

The pending summary judgment motion argues that Plaintiff has not established that his alleged exercise of constitutionally protected conduct was a substantial or motivating factor for his RHU placement.  See Doc. 40, p. 8.  They explain that Flynn was issued an institutional misconduct charge and placed in the RHU as the result of an August 12, 2010 investigative cell search the Plaintiff was found to be in possession of contraband, specifically, pornographic pictures.[4]  Therefore, Remaining Defendants conclude that an actionable claim of retaliation has not been pled.

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements.  First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Second, a prisoner must demonstrate that he "suffered some

---

4. They note that the finding of guilt rendered against Flynn on the misconduct charge (possession of contraband) was upheld at all levels of administrative review.

17

'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005). Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials

18

require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied.  Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional.  On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct. The Remaining Defendants have not provided this Court with sufficient facts to warrant a determination that Plaintiff would have been subjected to a cell search and placed in the RHU even if the inmate had not engaged in any constitutionally protected activity.

Given the liberal treatment afforded to pro se litigants, the Plaintiff has arguably set forth a viable claim that his exercise of constitutionally protected conduct was a substantial or motivating factor for his RHU placement and cell search.  Since this Court has been presented with only sparse facts which does not satisfy Remaining Defendants' burden of showing that their actions would have been taken regardless of Plaintiff's submission of a grievance, the request for summary judgment will be denied.  An appropriate Order will enter.

                                         S/Richard P. Conaboy
_____
                                   RICHARD P. CONABOY
                                 United States District Judge
DATED: February 3, 2015